```
                                   )
AMAX, INC. AND WORKTOOLS, INC.,    )
                                   )
          Plaintiffs,              )
                                   )
     v.                            )
                                   )        Civil Action No.
ACCO BRANDS CORP.,                 )        16-10695-NMG
                                   )
          Defendant.               )
                                   )
```

## MEMORANDUM & ORDER

Gorton, J.

Plaintiffs Amax, Inc. ("Amax") and Worktools, Inc. ("Worktools" and, collectively with Amax, "plaintiffs") allege that defendant ACCO Brands Corp. ("ACCO" or "defendant") has infringed their patents and trademark which relate to spring-enabled staplers.

The Court held a Markman hearing on October 5, 2017, during which the defendant presented a tutorial on the subject technology and the parties disputed the meaning of 13 terms that are included in 24 claims of the patents-in-suit.

## I. Overview of the Patented Technology

The plaintiffs and defendant sell competing desktop staplers. Worktools is the assignee of U.S. Patent Nos. 7,178,709 ("the '709 patent") and 7,748,589 ("the '589 patent") as to which Amax holds an exclusive license. Amax is also the assignee of U.S. Trademark Registration No. 3,377,921 for "Long

Reach" ("the Long Reach trademark").  Defendant manufactures and

sells the Swingline Quick Touch Full Strip and Quick Touch

Compact staplers.  Plaintiffs allege that defendant's staplers

infringe claims 4 and 5 of the '709 patent and claims 1-10, 12-

19 and 21-24 of the '589 patent.  The parties dispute the

meaning of 13 claim terms which they agree can be sorted into 7

groups.

## II.  **Analysis**

### A.  **Principals of Claim Construction**

In analyzing a patent infringement action, a court must

1) determine the meaning and scope of the patent claims asserted

to be infringed and 2) compare the properly construed claims to

the infringing device. <u>Markman</u> v. <u>Westview Instruments, Inc.</u>, 52

F.3d 967, 976 (Fed. Cir. 1995) (en banc), <u>aff'd</u>, 517 U.S. 370

(1996).  The first step, known as claim construction, is an

issue of law for the court to decide. <u>Id.</u> at 979.  The second

step is determined by the finder of fact. <u>Id.</u>

The Court's responsibility in construing claims is to

determine the meaning of claim terms as they would be understood

by persons of ordinary skill in the relevant art. <u>Bell Atl.</u>

<u>Network Servs., Inc.</u> v. <u>Covad Commc'ns Grp., Inc.</u>, 262 F.3d

1258, 1267 (Fed. Cir. 2001).  The meanings of the terms are

initially discerned from three sources of intrinsic evidence:

1) the claims themselves, 2) the patent specification and 3) the

prosecution history of the patent. See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582–83 (Fed. Cir. 1996).

The claims themselves define the scope of the patented invention. See Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Claim terms are generally given their "ordinary and customary meaning," which is the meaning that a person skilled in the art would attribute to the claim term. See id. at 1312-13. Even if a particular term has an ordinary and customary meaning, however, a court may need to examine the patent as a whole to determine if that meaning controls. Id. at 1313 ("[A] person of ordinary skill in the art is deemed to read the claim term . . . in the context of the entire patent . . . ."); see also Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005) (noting that a court cannot construe the ordinary meaning of a term "in a vacuum"). Ultimately, the correct construction will be one that

> stays true to the claim language and most naturally aligns
> with the patent's description of the invention.

Phillips, 415 F.3d at 1316 (quoting Renishaw PLC v. Marposs Societa' Per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

The patent specification is "the single best guide to the meaning of a disputed term" because it

> may reveal a special definition given to a claim term . . .
> that differs from the meaning it would otherwise
> possess . . . [such as] an intentional disclaimer, or
> disavowal, of claim scope by the inventor.

Id. at 1316, 1321.

The Court should also consult the prosecution history to see how the inventor and PTO understood the patent and to ensure the patentee does not argue in favor of an interpretation it has disclaimed. Id. at 1317.

In the rare event that analysis of the intrinsic evidence does not resolve an ambiguity in a disputed claim term, the Court may turn to extrinsic evidence, such as inventor and expert testimony, treatises and technical writings. Id. at 1317. Although extrinsic evidence may be helpful in construing claims, the intrinsic evidence is afforded the greatest weight in determining what a person of ordinary skill would have understood a claim to mean. V-Formation, Inc. v. Benetton Grp. SpA, 401 F.3d 1307, 1310-11 (Fed. Cir. 2005).

## B.    The '589 and '709 Patents

### i.    The Technology

The '709 patent issued in February, 2007.  The '589 patent is a continuation of the '709 patent and issued in July, 2010. The patents relate to spring-enabled desktop staplers.  The spring present in the stapler is linked to a striker and, when the striker is raised and released, the stored energy of the spring drives the staple through a "stack of papers".  When compared with a conventional desktop stapler, the spring-enabled

desktop stapler has a lower operating force which makes it easier to use with an extended hand on a desk.

### ii. Disputed Claim Terms

#### 1. "a body" (All Claims); "a base" (All Claims); "a handle" (All Claims)

Defendant contends that the terms "body," "base" and "handle" should be construed as structures separate from both each other and any other claimed component of the stapler. In support of its contention, defendant avers that the intrinsic evidence shows that 1) the "body", "base" and "handle" are listed as separate elements in every disputed claim, 2) the components must be separate structures so they can connect with each other as is claimed and 3) each visual embodiment shows the three components as separate structures.

Furthermore, defendant submits that plaintiffs are estopped from contending that the "handle" and "body" are anything but separate because of the position adopted by plaintiffs in Accentra, Inc. and WorkTools, Inc. v. Staples, Inc., No. 07-5862, 2013 WL 12113238 (C.D. Cal. June 5, 2013) [hereinafter "the Accentra case"]. Although Amax was not a party to that case, WorkTools was a party. Defendant suggests that Amax is also bound by issue preclusion because it acquired the assets of Accentra in 2012, thereby establishing privity with Accentra.

Plaintiffs dispute defendant's contention that the three terms should be construed as structures separate from each other. Instead, plaintiffs assert that the Court should adopt the plain and ordinary meaning of the terms "base" and "handle". Plaintiffs submit that the "body" is a multi-part structure that houses components. They contest defendant's constructions which add the limitation "separate" to each component and maintain that there is nothing in the intrinsic evidence requiring separateness of each component.

Plaintiffs also reject ACCO's contention that they are estopped from presenting their proposed constructions because they were not a party to the Accentra case and that litigation did not involve the '589 patent. Defendant rejoins that because the Accentra case involved the '709 patent which is a continuation of the '589 patent, estoppel applies in this case.

The claim language does not, as defendant contends, require a reading that the connected components are distinct from one another. Defendant's proposed construction imports the limitation "separate" to the terms. The ordinary meaning of "separate," however, suggests components that are

> [p]arted, divided, or withdrawn from others; disjoined, disconnected, detached, set or kept apart.

Electro Scientific Indus. v. Dynamic Details, Inc., 307 F.3d 1343 (Fed. Cir. 2002). Contrary to defendant's suggestion, the

base, for example, need not be "separate" from the body in order
to be "pivotally attached to the body" as is required in claim
1. See Powell v. Home Depot U.S.A., Inc., 663 F.3d 1221, 1231
(Fed. Cir. 2011) (rejecting defendant's contention that where a
claim lists components separately, the elements must be
physically divided).  Similarly, the handle need not be
"separate" from the body in order to be "hinged to the body".

Defendant relies on Becton, Dickinson & Co. v. Tyco
Healthcare Grp., LP, 616 F.3d 1249 (Fed. Cir. 2010) in its
contention that separately listed claim elements must be
constructed as distinct, separate components.  In Becton,
however, the claim language did not "suggest that the hinged arm
and the spring [could] be the same structure".  Powell, 663 F.3d
at 1231. (citing Becton, 616 F.3d at 1254 (Fed. Cir. 2010)).

The claim language at issue here does not indicate that the
three components must be physically separate.  The use of two
terms within a claim can indicate that those components have
distinct meanings without requiring that the components
represent separate structures. Applied Med. Resources Corp. v.
U.S. Surgical Corp., 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006)
(making clear that the use of two terms in a claim merely
"requires that they connote different meanings, not that they
necessarily refer to two different structures" (emphasis in
original)).  Here, the specification and figures support a

reading of the claims that makes clear that the body can be connected to and operable with the base and the handle and need not be physically detached.  The plain language of the claims include no "separate structures" limitation.

Defendant's reliance on judicial estoppel is unavailing here.  As defendant notes, the Federal Circuit has held that "the same claim term in the same patent or related patents carries the same construed meaning".  <u>Omega Engineering, Inc.</u> v. <u>Raytek Corp.</u>, 334 F.3d 1314, 1334 (Fed. Cir. 2003).  As this Court ruled in its summary judgment order, however,

> there is a material difference between the previously litigated '709 patent claims and the asserted claims of the '589 patent.

<u>Amax, Inc.</u> v. <u>Acco Brands Corp.</u>, No. 16-10695, 2017 WL 3399995 (D. Mass. Aug. 8, 2017).  Furthermore, the district court in the <u>Accentra</u> case did not construe the terms "handle", "base" or "body" in its claim construction order.  See <u>Accentra, Inc.</u> v. <u>Staples, Inc.</u>, No. 07-05862, 2008 WL 5787777 (C.D. Cal. Dec. 23, 2008).

Accordingly, the Court will decline to import the negative limitation of "separate" into each asserted claim.  The plain language of the claims does not require a construction of three separate structures for the body, base and handle.  Instead, the Court will construe the three terms to comport with their

ordinary meanings and will adopt the plaintiffs' proposed
constructions.

### 2. "a channel of the body" (Claim 1 of the '589 patent)

Here, the parties dispute the phrase "a channel of the
body" which appears in claim 1. Claim 1 describes "a striker
moving within a channel of the body". Defendant adds the
additional wording "partially enclosed passage" to describe the
"U"-shaped passage shown in the specification. Plaintiffs
contend that the channel is not truly enclosed because the "U"-
shaped passage leaves at least one side open.

Defendant's proposal adds an additional limitation to the
claim that is not supported by the claim language or the
specification. The Federal Circuit has reiterated that it is
not the district court's role in construing claims "to redefine
claim recitations or to read limitations into the claims" but
rather to "give meaning to limitations actually contained in the
claims". See Am. Piledriving Equip. v. Geoquip, Inc., 637 F.3d
1324 (Fed. Cir. 2011) (emphasis added). Accordingly, the Court
concludes that no further construction is needed.

### 3. "bumper" (Claims 6, 13 and 22 of the '589 patent)

Defendant's proposed construction imports the dictionary
definition of "bumper" which emphasizes its role in "absorbing
shock". By contrast, plaintiffs' construction tracks the claim

language and focuses on "provid[ing] a stop for the spring.

Plaintiffs' construction more accurately reflects the language

of the claim terms in the patent.  For example, claim 6

describes "a ceiling and a bumper that provides a stop for the

power spring".

Defendant's construction would import a dictionary meaning

that focuses on the

> abstract meaning of words rather than on the meaning of
> claim terms within the context of the entire patent.

Phillips, 415 F.3d at 1321 (Fed. Cir. 2005).  The Federal

Circuit has cautioned district courts to avoid "heavy reliance"

on dictionary definitions because they can often transform the

language of the claim. Id.  Plaintiffs' construction more

accurately reflects the claim language.

### 4.   "a handle rest position" (Claims 1, 2, 7, 16 and 18 of the '589 patent)

The parties dispute whether "a handle rest position" most

accurately describes the handle in relation to the body or the

base.  Plaintiffs maintain that the claim language refers to the

handle rest position relative to the body and contest

defendant's attempt to add the additional limitation of "handle

pressing area" that is not found in claims 1 or 2.  Defendant

counters that the body and base are both below the handle and

disputes plaintiffs' contention that "handle pressing area" is

an added term because the handle is defined as "having a pressing area near a front end thereof".

Defendant also contends that plaintiffs are judicially estopped from proposing their construction because of a construction adopted by the district court in the Accentra case. As already noted, however, the plaintiffs in the Accentra case did not assert claims from the '589 patent and asserted different claims from the '709 patent than those asserted here. Claims 24 and 27 of the '709 patent, asserted in the Accentra case, refer to the handle rest position in relation to the "base" rather than to the "body". On the other hand, the claim language in the '589 patent refers to the handle rest position in relation to the "body".

The plain language of the claims supports plaintiffs' construction. The claims specifically refer to the handle rest position "where the handle is moved to a position farthest away from the body" as opposed to the base. Defendant's proposed construction improperly imports a limitation from the specification contrary to the plain language of the claim. Libel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 913 (Fed. Cir. 2004) ("[I]t is improper to read limitations from the embodiment described in the specification..."). Accordingly, the Court will adopt plaintiffs' proposed construction.

### 5. "pre-release position" (Claims 1, 2, 4, 7, 14, 16, 18 and 23 of the '589 patent)

The parties dispute whether the pre-release position must be "immediately before" the staple is ejected or "at the point of being ejected". They also contest whether the construction should refer to the position of the handle or just the striker. Finally, they disagree about whether the asserted claims include the limitation of the "staple loading chamber".

Defendant suggests that there is nothing in the claim language that requires the pre-release position to refer to the time "immediately" before the power spring ejects. Plaintiffs do not otherwise give support for their contention that the word "immediately" is necessary. Their proposed construction of "immediately before" thus adds unnecessary language to the subject claim terms. <u>See</u> <u>Harris Corp.</u> v. <u>IXYS Corp.</u>, 114 F.3d 1149, 1152 (Fed. Cir. 1997) (rejecting construction of a term that "contribute[d] nothing but meaningless verbiage").

Moreover, the plain language of the claim contemplates that at the "pre-release position", the striker has already been freed. For example, the language in claim 1 denotes that when the striker is at the pre-release position of the handle, "the striker under bias from the power spring ejects the staple". The pre-release position is not consistent with a time "immediately before" the striker is freed.

The defendant's proposed construction, however, improperly conflates the handle position and the striker position. The plain language of the claims refers to the "handle" pre-release position and not the "striker" pre-release position. Furthermore, the term "staple loading chamber" is found in only some dependent claims and not all independent claims. There is a presumption that dependent claim limitations are not automatically included in the independent claims. GE Lighting Sols., LLC v. AgiLight, Inc., 750 F.3d 1304, 1310 (Fed. Cir. 2014) (finding that the district court "erred by importing limitations from the dependent claims of the [patent] into the independent claims"). Thus, the court declines to import the "staple loading chamber" limitation here.

Accordingly, for the reasons set forth above, the Court will adopt defendant's construction with the exception that it will not include the terms "striker" or "staple loading chamber". "Pre-release position" is construed as: "the position of the handle wherein the power spring causes the striker under bias from the power spring to eject a staple".

### 6. "a lever" (Claims 9 and 18 of the '589 patent)

The parties dispute whether the term "lever" is readily understood by a person of ordinary skill in the art of staplers without further construction. Plaintiffs aver that nothing in

the claim language suggests that the lever must be physically separate such that the "separate structure" language is required. Moreover, plaintiffs contend that the three points described in defendant's construction add additional limitations not found in the claim language. Defendant disputes that the word "lever" is readily understood without a construction.

Just as with the terms "handle," "base" and "body," the Court declines to import the separate structures limitation here. See Powell, 663 F.3d at 1231. The inclusion of the three-point description constitutes unnecessary verbiage. The claim language here makes the construction of "lever" clear because the lever is described as "pivot[ing] within the body to link the power spring". The description of the pivot obviates the need for the three point limitation proposed by defendant. Accordingly, the meaning of the word "lever" is clear and the description of the three pivot points is unnecessary. Phillips, 415 F.3d at 1314. No further construction is needed.

> **7.** **"a desktop stapler to be gripped by a user's fingers" (Claim 2 of the '589 patent); "wherein a user's hand normally operates the stapler by lifting the stapler off of a resting surface and squeezing the stapler between the handle and an underside of the base" (Claim 10 of the '589 patent); "wherein a user's hand normally operates the stapler by lifting the stapler off a resting surface and squeezing the stapler between the handle at the pressing area and an underside of the base"**

As to each of the three terms at issue here, defendant proposes to limit the term by including the language "excludes staplers with a flat base".  Plaintiffs reply that the Court should not import that negative construction because, with respect to the first term, it appears only in the preamble, and with respect to the second and third, they appear only in dependent claims 10 and 19, respectively.  Defendant avers that the prosecution history supports its reading of the terms because the applicant distinguished prior art, the Perez stapler, by describing "[t]he flat base of Perez".

Although evidence from prosecution history is often relevant to "shed useful light on the relevant art," the Federal Circuit has emphasized that it is

> less significant than the intrinsic record in determining the legally operative meaning of claim language.

Phillips, 415 F.3d at 1317 (internal citation omitted). Furthermore, a disclaimer from the prosecution history does not attach unless the alleged disavowal is "clear and unmistakable". Omega Engineering, 334 F.3d at 1326.  The evidence proffered by defendant from the prosecution history lacks a clear specification of the flat base stapler and a concise picture of how the inventor understood that limitation during the prosecution.  Accordingly, the court will not import the broad

limitation to limit otherwise clear claim language here.  No
further construction is necessary.

### iii. Indefiniteness

The parties also dispute whether six sets of claims are
indefinite and whether the Court should consider indefiniteness
at this stage of the case.  Defendant contends that all asserted
claims but one are invalid as indefinite because they contain
both apparatus claims and method steps.  According to defendant,
the preamble to each claim makes clear that an apparatus (the
stapler) is being claimed.  Each claim, however, also recites a
method step.  For example, defendant points to claim 2, which
states that "the handle, at the location of the pressing area,
moves one inch toward the body".  Defendant emphasizes that
these limitations require an action by the user and that the
limitations do not merely describe a stapler that is capable of
movement.

Furthermore, defendant submits that five additional groups
of claim terms are indefinite because they fail to claim
distinctly the subject matter that the applicant regards as the
invention.  For example, defendant avers that "stack of papers"
is indefinite because it fails to specify the number of sheets
of paper in the "stack" or to give a person of ordinary skill in
the art any way to determine whether a given stapler would
succeed in binding a "stack of papers".

Plaintiffs maintain that the Court should not consider arguments of indefiniteness at the <u>Markman</u> stage. They suggest that, although indefiniteness is ultimately a question of law, the issue is often predicated on underlying questions of fact. Plaintiffs also dispute defendant's specific contentions that many of the claims are indefinite.

The requirement that claims be definite is set forth in the second paragraph of 35 U.S.C. § 112, which provides that claims must particularly point out and distinctly claim the subject matter which the applicant regards as his invention. The requirement essentially serves a public notice function and assures that patent claims will be "sufficiently precise to permit a potential competitor to determine whether or not he is infringing". <u>Amgen Inc.</u> v. <u>Hoechst Marion Roussel, Inc.</u>, 314 F.3d 1313, 1342 (Fed. Cir. 2003) (internal quotation omitted).

To prove indefiniteness of patent claims, sufficient to render the patent invalid, an accused infringer must show, by clear and convincing evidence, that a skilled artisan could not discern the bounds of the claim

> based upon the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area.

<u>Halliburton Energy Servs., Inc.</u> v. <u>M-I LLC</u>, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008). That is a high bar. The Federal Circuit has made clear that a claim is not "indefinite merely because

its scope is not ascertainable from the face of the claims."

Amgen, 314 F.3d at 1342. Instead, the claim must be "insolubly

ambiguous". Halliburton Energy Servs., 514 F.3d at 1249.

Indeed,

> [e]ven if it is a formidable task to understand a claim,
> and the result not unanimously accepted, as long as the
> boundaries of a claim may be understood it is sufficiently
> clear to avoid invalidity for indefiniteness.

Invitogen Corp. v. Biocrest Mfg., L.P., 424 F.3d 1374, 1383

(Fed. Cir. 2005) (internal quotation omitted).

The Court agrees with plaintiffs that it is inappropriate

to resolve the question of indefiniteness at this juncture.

Although indefiniteness is a question of law and it is true that

"the same principles that generally govern claim construction

are applicable to determining whether allegedly indefinite claim

language is subject to construction," Praxair, Inc. v. ATMI,

Inc., 543 F.3d 1306, 1319 (Fed. Cir. 2008) (citation omitted),

there are several reasons to defer rulings on indefiniteness

until summary judgment, CSB-Syst. Int'l Inc. v. SAP Am., Inc.,

No. 10-2156, 2011 WL 3240838, at *17 (E.D. Pa. July 28, 2011).

Foremost among those reasons is the fact that an allegedly

infringing party must prove indefiniteness by "clear and

convincing proof" to overcome the statutory presumption of

validity. Biosig Instruments, Inc. v. Nautilus, Inc., 783 F.3d

1374 (Fed. Cir. 2015) (reviewing a district court's decision on

indefiniteness at the summary judgment stage).  The standard for

establishing indefiniteness is higher than the burden a party

must carry to determine a term's construction.  The Federal

Circuit has emphasized that it

> ha[s] certainly not endorsed a regime in which validity
> analysis is a regular component of claim construction.

Phillips, 415 F.3d at 1327 (declining to construe a term

restrictively for the purpose of sustaining its validity)

(citing Nazomi Commc'ns, Inc. v. ARM Holdings, PLC, 403 F.3d

1364, 1369 (Fed. Cir. 2005)).

Courts also decline to consider indefiniteness at this

stage because that determination is likely to be dispositive.

Courts have recognized that

> unlike a Markman proceeding that gives meaning to patent
> claims, indefiniteness invalidates the claims entirely.
> As such, this dispositive effect is more appropriately
> tackled at summary judgment...

CSB-Syst. Int'l, 2011 WL 3240838, at *18 (citing numerous

instances in which courts elected to defer indefiniteness until

summary judgment).  Because the determination is likely to be

determinative, many courts have declined to address

indefiniteness arguments at the claim construction stage.

Koninklijke Philips Electronics N.V. v. Zoll Med. Corp., 914 F.

Supp. 2d 89, 101 (D. Mass. 2012); see also 3-D Matrix, Inc. v.

Menicon Co., No. 14-10205, 2016 WL 111410 (D. Mass. Jan. 11,

2016) (deferring the indefiniteness determination at the Markman

stage).  Here, defendant's contention that all but one asserted claim is invalid as indefinite confirms the dispositive nature of the inquiry and underscores the prudence of deferring that inquiry until a later date.

Accordingly, the Court will decline to address the indefiniteness claims here and will resolve that issue at a later point upon a complete record.

## <u>MARKMAN</u> ORDER

In accordance with the foregoing,

with respect to United States Patent Nos. 7,178,709 and 7,748,589:

a)  "a body" means:

**"a structure to support and position components of the stapler**";

b)  "a base" means:

**"a structure that supports the stapler";**

c)  "a handle" means:

**"a structure the user presses (or grips) when using the stapler";**

d)  "a channel of the body" needs no further construction;

e)  "bumper" means:

**"structure that provides a stop for the power spring";**

f)  "a handle rest position" means:

"the handle is moved to a position farthest away from the body";

g)   "pre-release position" means:

"the position of the handle wherein the power spring causes the striker under bias from the power spring to eject a staple";

h)   "a lever" needs no further construction;

i)   "a desktop stapler to be gripped by a user's fingers" needs no further construction;

j)   "wherein a user's hand normally operates the stapler by lifting the stapler off of a resting surface and squeezing the stapler between the handle and an underside of the base" needs no further construction; and

k)   "wherein a user's hand normally operates the stapler by lifting the stapler off a resting surface and squeezing the stapler between the handle at the pressing area and an underside of the base" needs no further construction.

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated: October 13, 2017